UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

STEVEN D. MAJOR,

               Petitioner,          **DECISION AND ORDER**
                                         **No. 10-CV-0732(MAT)**

    -vs-

WARDEN,
ATTICA CORRECTIONAL FACILITY

               Respondent.

_____

## I.   Introduction

Petitioner Steven D. Major ("Petitioner"), through counsel, has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his custody pursuant to a judgment entered August 20, 2004, in New York State, Supreme Court, Erie County (Hon. Ronald H. Tills), convicting him, after a jury trial, of three counts of Murder in the Second Degree (N.Y. Penal Law ("Penal Law") § 125.25(1), (3)), Robbery in the First Degree (Penal Law § 160.15(2)), Attempted Robbery in the First Degree (Penal Law §§ 110.00, 160.15(2)), and Criminal Possession of a Weapon in the Second Degree (Penal Law § 265.03(2)).

For the reasons stated below, habeas relief is denied and the petition is dismissed.

## II.   Factual Background and Procedural History

Petitioner was indicted by an Erie County Grand Jury and charged with three counts of second degree murder, first degree robbery, first degree attempted robbery, second degree criminal possession of a weapon, and second degree criminal solicitation. The charges arose from a shooting incident that occurred on November 15, 2001, on Kenmore Avenue in the City of Buffalo, New York.

On that date, Greg Young ("Young"), who lived in a Buffalo housing complex on Kenmore Avenue, invited the following acquaintances to his apartment: Thaddeus McDuffie ("McDuffie"), Willie Price ("Chill"), Tim Whatley ("Whatley"), "MJ", and Petitioner.   Rolanda Lewis ("Lewis"), Young's cousin, was also present at the apartment.   The individuals engaged in a dice game in which Whatley won the greatest portion of the proceeds.   After losing his money, Petitioner brandished a handgun and demanded that Whatley hand over his winnings, which he did.

The doorbell then rang, and Young left the apartment to answer the door.   After taking $160 from Whatley, Petitioner exited the apartment and descended the flight of stairs toward the apartment complex exit.   Thereafter, the witnesses heard a gunshot.   Trial Trans. [T.T.] 162-163, 165-177, 222-239, 273-284, 290-307, 422-445, 603-616.

At the approximate time Petitioner left Young's apartment, Jason Spikes ("Spikes" or "the victim") arrived at the entrance to

Young's apartment building.  T.T. 428.  Spikes, who had been driven
there by his girlfriend Jenna Barber ("Barber"), was going to see
Young about giving or selling him a pit bull.  T.T. 55-57, 421,
426.  Barber parked her vehicle and observed Spikes walk to the
entrance of the apartment complex.  She observed two black males
open the door and stand in front of Spikes.  T.T. 61-63.  Barber
briefly turned away from the two men to look at Spikes' eight-year-
old nephew, Qnique McCrimmon ("McCrimmon"), who was seated in the
rear seat of the vehicle, and, as she did so, she heard a gunshot.
T.T. 64-65.  She then saw Spikes jump over the porch railing and
run away in the general direction of her vehicle.  The other two
men ran in the opposite direction.  T.T. 66-68.

    McCrimmon testified that he saw his uncle (i.e., Spikes) knock
on the door to the apartment complex and that two men came
downstairs to answer the door; one was carrying a gun.  T.T. 529.
According to McCrimmon, the man with the gun told his uncle to
"give him some money," which Spikes did not do.  T.T. 529.  The man
with the gun, whom McCrimmon identified at trial as Petitioner,
then shot Spikes.  T.T. 529-530.  McCrimmon testified that after
his uncle had been shot, he "flipped over" the railing and ran
away.  T.T. 531.

    After the shooting, Barber left the scene and drove around in
an effort to locate Spikes.  She eventually found Spikes lying in
a parking lot nearby, and she remained with him until an ambulance
and police arrived.  T.T. 68, 70-71, 261, 535-536.  Spikes was

taken the hospital where he died from a gunshot wound to the heart. T.T. 413-418, 657, 705.

The individuals who had remained in Young's apartment fled after hearing the gunshot.  Later, police discovered a cellular telephone which belonged to Price lying on the sidewalk in front of 1794 Kenmore Avenue, the location of the crime scene.  T.T. 346, 677.

Shortly after the shooting, police investigators learned Petitioner's name and contacted him by telephone, informing him that they wanted to question him.  T.T. 678-682, 690-691.  About the time the police were trying to contact him, Petitioner contacted McDuffie for purposes of obtaining Price's whereabouts because he wanted to "whack [Price]."  However, McDuffie did not disclose this information to Petitioner. Petitioner told McDuffie to call him if he saw Price.  T.T. 454-457.

Petitioner subsequently was indicted and charged with three counts of Murder in the Second Degree, Robbery in the First Degree, Attempted Robbery in the First Degree, Criminal Possession of a Weapon in the Second Degree, and Criminal Solicitation in the Second Degree.[1]  The police were unable to locate Petitioner for almost two years.  In September 2003, investigators received information from a federal marshal that Petitioner was in Atlanta,

---

[1]

    The first six counts of the indictment were related to the events that occurred on November 15, 2001, concerning Spike's murder.  The seventh count of the indictment was related to Petitioner's alleged solicitation of McDuffie to murder Price.

-4-

Georgia.  T.T. 691.  On September 3, 2003, Petitioner was taken into custody at a hotel room in Georgia and eventually extradited to Buffalo.  T.T. 150-153.

Prior to trial, Petitioner unsuccessfully moved to sever the seventh count of the indictment.  After jury selection and prior to the commencement of proof, the trial court issued a ruling permitting the prosecution to cross-examine Petitioner, if he chose to testify, about his possession of a loaded handgun when he was arrested.  T.T. 2-11.  Petitioner did not testify at trial.  The jury returned a verdict finding Petitioner guilty of all of the charges except Criminal Solicitation, which was dismissed after the jury began deliberating.  T.T. 888-897.

Petitioner was sentenced to indeterminate terms of imprisonment of twenty-five years to life for the murder counts and lesser terms for the remaining counts.  Sentencing Mins. [S.M.] 16-18.

The Appellate Division, Fourth Department, of New York State Supreme Court ("the Fourth Department") unanimously affirmed the judgment of conviction on April 24, 2009, and leave to appeal was denied.  People v. Major, 61 A.D.3d 1417 (4th Dep't 2009); lv. denied, 12 N.Y.3d 1227 (2009).

This habeas corpus petition followed in which Petitioner seeks relief on the following grounds: the trial court's ruling permitting the People to cross-examine Petitioner about his possession of a loaded handgun when he was arrested denied him his

constitutional rights; the trial court's failure to sever the seventh count of the indictment denied Petitioner his constitutional rights; and the trial court erred in its instruction to the jury after dismissing count seven of the indictment, thereby violating his constitutional rights. <u>See</u> Pet. ¶ 12, Grounds One-Two (Dkt. No. 1); <u>see also</u> Pet'r Mem. of Law (Dkt. No. 7).

## III. Analysis of the Petition

### 1. Ground One of the Petition is Procedurally Defaulted

In the first ground of the petition, Petitioner argues, as he did on direct appeal, that the trial court's <u>Sandoval</u>[2] ruling permitting the People to cross-examine him about his possession of a loaded handgun upon his arrest denied him his constitutional rights to testify and to a fair trial, and denied him due process of law. <u>See</u> Pet. ¶12, Ground One; Pet'r Mem. of Law, Ground One. The Fourth Department rejected this claim on a state procedural ground, pursuant to C.P.L. § 470.05(2), because Petitioner had not properly preserved the issue for appellate review.[3] <u>Major</u>, 61

---

[2]

    <u>People v. Sandoval</u>, 34 N.Y.2d 371, 357 N.Y.S.2d 849, 314 N.E.2d 413 (N.Y.1974). As the Second Circuit has noted, " '[i]n New York state courts a defendant may request a preliminary hearing, known as a <u>Sandoval</u> hearing, to determine whether, if he elects to testify, his prior criminal record may be used to impeach his credibility.' " <u>Greiner v. Wells,</u> 417 F.3d 305, 310 n. 1 (2d Cir. 2005) (quoting <u>Norde v. Keane</u>, 294 F.3d 401, n. 1 (2d Cir. 2002)).

[3]

    At trial, counsel objected to the Court's ruling solely on the basis that the prosecution did not provide adequate notice of its intent to use the prior bad act at issue to cross-examine Petitioner, if he chose to testify. T.T. 2-11.

A.D.3d at 1417.  Consequently, the claim is procedurally defaulted from habeas review by this Court.

A federal court may not review a question of federal law decided by a state court if the state court's decision rested on a state law ground that is independent of the federal question and adequate to support the judgment. Coleman v. Thompson, 501 U.S. 722, 729 (1991). "This rule applies whether the state law ground is substantive or procedural." Id. (citations omitted). Where a state court declines to address a prisoner's federal claims based upon the failure meet a state procedural requirement, "the state judgment rests on independent and adequate state procedural grounds." Id. (citing, inter alia, Wainwright v. Sykes, 433 U.S. 72, 81, 87 (1977)).

A state procedural bar qualifies as an "independent and adequate" state law ground where "'the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar.'" Levine v. Comm'r of Corr. Servs., 44 F.3d 121, 126 (2d Cir. 1995) (quoting Harris v. Reed, 489 U.S. 255, 262 (1989)).  A state procedural rule will be adequate to preclude habeas review if it is "firmly established and regularly followed." Lee v. Kemna, 534 U.S. 362, 376 (2002) (quotation omitted).

Here, the Fourth Department relied on New York's preservation rule, codified at C.P.L. § 470.05(2), to deny Petitioner's claim because it had not been properly preserved for appellate review.

See Major, 61 A.D.3d at 1417. In New York, the "firmly established and regularly followed rule," Lee, 534 U.S. at 386, is that "points which were not raised at trial may not be considered for the first time on appeal." People v. Thomas, 50 N.Y.2d 467, 471 (1980) (citing N.Y. Crim. Proc. Law § 470.05(2)).  A party must make a specific protest at the time of a claimed error to preserve an issue for appellate review. People v. Robinson, 88 N.Y.2d 1001, 1002 (1996) ("to frame and preserve a question of law reviewable by this Court, an objection or exception must be made with sufficient specificity at the trial, when the nisi prius court has an opportunity to consider and deal with the asserted error."); see also People v. Kello, 96 N.Y.2d 740, 743-44 (2001) (holding that defendant's objection made on the basis of a trial evidence error was distinct from a Confrontation Clause objection and, thus, a hearsay objection was not sufficient to preserve his constitutional claims).

The Second Circuit has consistently determined that C.P.L. § 470.05(2) is an independent and adequate state procedural ground where, as here, the defense attempts to raise a different claim on appeal than was raised before the trial court. See Garcia v. Lewis, 188 F.3d 71, 82 (2d Cir. 1999) ("Garcia's trial counsel failed to bring to the trial court's attention the claim that Garcia later attempted to advance on appeal. This ran afoul of New York's legitimate requirement that objections be raised "in a way that [gives] the [trial court] the opportunity to remedy the problem and

thereby avert reversible error.") (quotation omitted; alterations in original). As in Garcia, the basis for the objection raised by defense counsel at trial was different than that which was argued by appellate counsel on appeal. The Court accordingly finds that the Fourth Department's reliance on New York's preservation constitutes an adequate and independent state ground which creates a procedural default of Petitioner's Sandoval claim. See Garcia, 188 F.3d at 82.

A finding of procedural default precludes habeas review of the federal claim, unless the petitioner can show "cause" for the default and "prejudice" attributable thereto, Murray v. Carrier, 477 U.S. 478, 485 (1986), or demonstrate that the failure to consider the federal claim on habeas will result in a "fundamental miscarriage of justice," id. at 495 (quoting Engle v. Isaac, 456 U.S. 107, 135 (1982)). Petitioner does not allege cause for the procedural default, and none is apparent on the record before the Court. Consequently, the Court need not consider the "prejudice" prong. See McCleskey v. Zant, 499 U.S. 467, 494 (1991) (failure to make a showing of either cause or prejudice defeats the petitioner's ability to overcome the procedural default on this basis); Murray, 477 U.S. at 496 (adhering to the cause-and-prejudice test "in the conjunctive").

Furthermore, Petitioner has not alleged facts sufficient to avail himself of the "fundamental miscarriage of justice" exception. A miscarriage of justice occurs "in an extraordinary

case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." <u>Murray</u>, 477 U.S. at 496. There is nothing in the record to suggest that such exceptional circumstances are present here. Because Petitioner cannot overcome the procedural default by demonstrating that a miscarriage of justice will result if his evidentiary claim is not heard, the claim is barred from further review.

**2.   Ground Two of the Petition is Partially Meritless and Partially Procedurally Defaulted**

In the second ground of the petition, Petitioner claims, as he did on direct appeal, that (1) the trial court's failure to sever the seventh count of the indictment denied him his constitutional rights to testify and to a fair trial, and denied him due process of law; and (2) the trial court erred in its instruction to the jury after dismissing count seven of the indictment, thereby violating his constitutional rights. <u>See</u> Pet. ¶ 12, Ground Two; Pet'r Mem. of Law at 18-24.

**(A)   Trial Court's Failure to Sever the Seventh Count of the Indictment**

The Fourth Department rejected Petitioner's severance claim on the merits. <u>Major</u>, 61 A.D.3d at 1417 (holding that the trial court "properly refused to sever count seven of the indictment, charging defendant with criminal solicitation in the second degree" because it "was properly joined pursuant to CPL 200.20(2)(b) because evidence that defendant sought assistance in finding and killing the murder victim, who was a witness to the other offenses charged,

was material and admissible as evidence-in-chief in establishing defendant's consciousness of guilt with respect to those other offenses") (citations omitted). Furthermore, the Fourth Department concluded, the trial court was without discretion to sever once the counts were properly joined. Id. (citations omitted). As discussed below, there was no error of state law, nor an error of federal constitutional dimension. Consequently, the severance claim provides no basis for habeas relief.

It is well-established that mere errors of state law do not warrant habeas relief. Estelle v. McGuire, 502 U.S. 62, 67 (1991) ("[H]abeas corpus relief does not lie for errors of state law." (citations omitted)). Where severance is available under the pertinent state and federal law, decisions to sever are committed to the broad discretion of the trial court, and will be reversed only upon a showing of substantial prejudice. United States v. Alvarado, 882 F.2d 645, 655 (2d Cir. 1989), cert. denied, 493 U.S. 1071 (1990). Thus, "[j]oinder of offenses rises to the level of a constitutional violation only if it actually render[s] petitioner's state trial fundamentally unfair and hence, violative of due process." Herring v. Meachum, 11 F.3d 374, 377 (2d Cir. 1993) (collateral review of habeas petition; holding that denial of severance did not warrant reversal of conviction).

Here, as the state courts concluded, the Criminal Solicitation charge (related to Petitioner's attempt to enlist McDuffie's assistance in eliminating a witness to Spikes' murder) and the

remaining offenses (related to the events that occurred on November 15, 2001) were properly joinable under C.P.L. § 200.20(2)(b). See People v. Bongarzone, 69 N.Y.2d 892, 895 (1987) ("Pursuant to CPL 200.20 (2) (b), two offenses, even though based on separate and distinct criminal transactions, may be joined in the discretion of the trial court if they are of such a nature that proof of either offense would be material and admissible as evidence-in-chief upon the trial of the other.") (citations omitted). The evidence that Petitioner allegedly sought assistance from McDuffie in finding and killing Price, who was a witness to the other offenses charged in the indictment, was material and admissible as evidence-in-chief in establishing Petitioner's consciousness of guilt with respect to those other offenses. See People v. Lee, 56 A.D.3d 1192 (4th Dep't 2008) (holding that the trial court "denied [defendant's] motion to sever the counts of the indictment with respect to each victim" where the "offenses against each victim were joinable under CPL 200.20 (2) (b) because evidence of the theft from each victim would be material and admissible as evidence-in-chief with respect to the other two victims and, once the offenses were properly joined, the court lacked the statutory authority to sever") (internal quotations and citations omitted).

Furthermore, as a matter of state law, the trial court did not have discretion to sever the counts once they were properly joined under C.P.L. § 200.20(2)(b). See People v. Kelley, 46 A.D.3d 1329, 1331-32 (4th Dep't 2007) ("Here, the offenses were properly joined

pursuant to CPL 200.20 (2) (b), and thus the court lacked statutory authority to grant defendant's [severance] motion.  The evidence presented at the severance hearing established that defendant told the attempted murder victim, who at the time was his girlfriend, that he previously committed the murder, and that statement was material and relevant on the issue of defendant's motive and intent thereafter to attempt to kill her.") (internal citations and quotations omitted).

Petitioner nevertheless contends that joinder of the counts resulted in substantial prejudice, arguing that presentation of the seventh count of the indictment to the jury created a presumption that Petitioner was guilty of the first six counts. He points to two prospective jurors during jury selection who expressed what Petitioner characterizes as an "inability to separate the [criminal solicitation charge from the remaining charges]" during jury selection.  Pet'r Mem. of Law at 20.  Although these two prospective jurors were dismissed and never were seated, Petitioner argues that "their comments were heard by the jury panel, influencing other members of the jury." Id.  He also asserts that the jury's inability to separate the solicitation charge from the remaining charges is evidenced by the "significant amount of time" the jury took "to review and deliberate on [the] seventh charge." Pet'r Mem. of Law at 21.

Although "[t]here is indeed always a danger when several crimes are tried together, that the jury may use the evidence

cumulatively," the Supreme Court has "explicitly accepted that
'[t]his type of prejudicial effect is acknowledged to inhere in
criminal practice, but it is justified on the grounds that (1) the
jury is expected to follow instructions in limiting this evidence
to its proper function, and (2) the convenience of trying different
crimes against the same person . . . in the same trial is a valid
governmental interest.'" Herring, 11 F.3d at 377 (quoting Spencer
v. Texas, 385 U.S. 554, 562 (1967)). Petitioner's contentions fall
far short of showing actual prejudice so as to entitle Petitioner
to habeas relief insofar as they are entirely speculative in
nature.  There is nothing in the record before this Court that
suggests that the jury was affected by the two dismissed jurors'
statements or that any member of the jury was, in fact, unable to
separate the solicitation charge from the remaining charges.

     Moreover, the proof of Petitioner's guilt, independent of the
solicitation charge, was strong.  Overall, the testimonial evidence
presented by eyewitnesses Price, Whatley, Lewis, and McDuffie was
consistent and compelling.  These witnesses identified Petitioner
as the person who robbed Whatley at gunpoint and stated that he was
only individual who possessed a gun on the night of the shooting.
Barber, who was accompanied by the victim's young nephew
(McCrimmon) on the night of the crime, testified that she saw the
victim walk to the entrance of the apartment building and saw two
black males come out.  When she turned to look at McCrimmon, who
later identified Petitioner as the shooter, she heard a gunshot and

-14-

turned back to see the victim jump over the railing and run.  Young
testified that when his doorbell rang on the night of the crime,
Petitioner accompanied him downstairs to answer it.  Young
testified that once he and Petitioner were outside, he saw Spikes
argue with Petitioner about money.  Although Young was not able to
identify Petitioner in the courtroom, he testified that he observed
Petitioner shoot Spikes on the night of the crime.

In sum, Petitioner cannot show that his federal constitutional
rights were violated by the trial court's failure to sever the
seventh count of the indictment, which was not improper as a matter
of state law or federal constitutional law.  This portion of
Petitioner's severance claim is therefore dismissed on the merits.

### (B)  Trial Court Erred in its Instruction to the Jury After Dismissing Count Seven of the Indictment

Petitioner contends, as he did on direct appeal, that the
trial court erred in its instruction to the jury after dismissing
count seven of the indictment.[4]  See Pet. ¶ 12, Ground Two; Pet'r
Mem. of Law at 20-24.  The Fourth Department rejected this claim on
a state procedural ground, pursuant to C.P.L. § 470.05(2), because

---

[4]

The trial court dismissed the solicitation charge on the basis that the
prosecution failed to properly allege in the indictment (and the bill of
particulars) the theory of Petitioner's role in the offense (i.e., principal or
accessory).  T.T. 889.  After the trial court dismissed the seventh count of the
indictment, it instructed the jury as follows: "[a]fter reviewing the facts and
purely on legal basis and not on evidentiary basis of any kind, count seven has
been dismissed and you shall no longer consider it.  Now, if evidence presented
was exclusively for seven you are to disregard.  But if the evidence received,
even though it was, had to do with count seven had to do with the rest of the six
counts, that aspect of it you can consider and take that into consideration in
making your determinations of one through six, do you understand?"  T.T. 899.

Petitioner failed to preserve the issue for appellate review.  <u>See</u> <u>Major</u>, 61 A.D.3d at 1417.  Consequently, the claim is procedurally defaulted from review by this Court.

As discussed above, a federal court may not review a question of federal law decided by a state court if the state court's decision rested on a state law ground that is independent of the federal question and adequate to support the judgment.  <u>See</u> <u>Coleman</u>, 501 U.S. at 729.  Here, the Fourth Department relied exclusively on C.P.L. § 470.05(2) to deny Petitioner's claim because it had not been preserved by a timely and specific objection.  <u>See</u> <u>Major</u>, 61 A.D.3d at 1417.

"[T]he Second Circuit has squarely held that the failure to object to a jury instruction at trial constitutes a procedural default under New York law barring habeas review." <u>Smith v. Artus</u>, 03 Civ.6982(JSR)(GWG), 2004 WL 789769, at *15 (S.D.N.Y. Apr. 14, 2004)(citing <u>Reyes v. Keane</u>, 118 F.3d 136, 138 (2d Cir. 1997) ("A state prisoner who fails to object to a jury instruction in accordance with state procedural rules procedurally forfeits that argument on federal habeas review.")).  Consistent with this precedent, the Court concludes that the Fourth Department properly relied upon C.P.L. § 470.05(2) as an adequate and independent state procedural ground to dismiss the jury instruction claim. Accordingly, Petitioner's claim of alleged error in the trial court's jury instruction is subject to a procedural default. <u>See</u> <u>id.</u>

Petitioner cannot demonstrate cause and prejudice to overcome the procedural default.  Petitioner has not alleged cause for the default or prejudice resulting therefrom. Furthermore, Petitioner has not alleged facts or otherwise attempted to introduce new evidence of his innocence, which is essential to establish a "fundamental miscarriage of justice," that would allow this Court to reach the merits of his barred habeas claim.  See Schlup v. Delo, 513 U.S. 298, 316 (1995).  Indeed, as discussed above, the evidence of his guilt, independent of the solicitation charge, was strong.  Accordingly, this portion of Petitioner's claim is procedurally defaulted and denied on that basis.

## IV. Conclusion

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. No. 1) is denied, and the petition is dismissed.  Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000).  The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person.  Coppedge v. United States, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED**.

S/Michael A. Telesca

_____

HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:      January 10, 2012
            Rochester, New York